THE STATE ex rel. MORRIS KELLY v. GUY D. KIRBY, Judge of Juvenile Court of Greene County.

In Banc, July 2, 1914.

1. **PROHIBITION: No Joinder of Issues: Juvenile Court.** If no demurrer to the return of respondent to a writ of prohibition or other adversary pleading is filed by relator, there is no joinder of issues; and in such condition of the pleadings, the court will not rule on grave questions raised by relator's brief, such as the constitutionality of a statute creating a juvenile court and prescribing procedure therein. And that should especially be the course pursued where kindred acts of the Legislature have been upheld and respondent circuit judge in his return states that his purpose is to try the juvenile relator just as if he were prosecuted on the same charge in the criminal court, and it is manifest relator is not likely to be deprived of the rights and privileges granted to him under the Constitution and statutes.

2. **JUVENILE COURTS: Only One Existent Statute.** At the present time there is only one valid existing statute concerning juvenile courts and the trial, punishment and care of negligent and delinquent children, and that is the Act of April 11, 1911, Laws 1911, p. 177; and an information against such a child should be based upon said statute, and the procedure should be in accordance therewith, which means that the trial is to be in accordance with "the practice and procedure prescribed by law for the conducting of criminal cases."

Prohibition.

WRIT DENIED.

*T. J. Delaney* and *Talma S. Heffernan* for relator.

Relator questions generally the constitutionality of the act establishing the said juvenile court; and even if said court has a valid existence, relator questions the right of said court to proceed against this relator in the manner in which it is attempting to do. Said Act creating said court, and the provisions thereof generally and the provisions thereof as affecting relator are violative of the following provisions of the Constitution of Missouri: Secs. 5, 12, 22, 24, 30, Art. 2; Secs. 28, 53, 54, art. 4, subdiv. 2; Secs. 1, 38,

art. 6.   (1)  The Act of April 11, 1911, Laws 1911, p.
177, contains more than one subject and the subject
of prosecution for alleged crimes is not expressed in
the title as required by section 28, article 4, Consti-
tution.   (2)  The legislation is special in nature and
in the manner of its passage (without notice, etc.), vio-
lates section 53, article 4, subdivision 2, and section 54,
article 4.   (3)  Treating it as the creation of a judicial
tribunal, it is unauthorized.  The courts authorized by
the Constitution do not include courts of this character,
as is seen from enumeration in section 1 of article 6.
(4)  It attempts to prescribe procedure and authorizes
procedure without indictment; without requiring full
disclosure of the nature and character of the offense
charged; without providing for hearing or bail, as re-
quired by Secs. 12, 22, 24, 30, art. 2; sec. 38, art. 6.
(5)  It makes no certain provision for punishment, but
lodges arbitrary power with the judge and even per-
mits a dabbling with matters of religion under the
guise of punishment or regulation, violative of section
5, article 2.   (6)  Under the guise of defining a "neg-
lected child," and a "delinquent child," it attempts to
arbitrarily, unnecessarily and oppressively interfere
with the family relations, to interfere with the personal
liberty of citizens under the age of seventeen, to pun-
ish children and deprive them of liberty for the short-
coming or crimes of the parents, or because of or-
phanage, to authorize restraint of liberty for indeter-
minate periods for acts not essentially criminal, to
confer on the judge and probation officer powers and
authority not regulated by law.  In the general scope
it is un-American and undemocratic.  And while a duty
exists to care for helpless and abandoned children, that
system which treats them as quasi-criminal, and which
fills the land with men grown from institutional chil-
dren must be contrary to a wise public policy.   (7)
From any viewpoint, it permits the trial and convic-
tion for crime without due process of law and does not

permit one proceeded against thereunder the equal protection of the law, as provided by section 30 of article 2.

## STATEMENT.

On the 11th day of February, 1914, the relator filed an application in this court for a writ of prohibition against Guy D. Kirby, judge of the juvenile court of Greene county, Missouri, alleging in substance that he was born in 1897, and under the age of seventeen years, and that on the —— day of —— 1913, he was arrested upon a charge of murder in the first degree committed upon the body of one Roy Johnson upon the 18th day of November, 1913.

Relator states that a preliminary hearing of said charge was had before a justice of the peace of the city of Springfield, Missouri, and relator was held to answer said charge and such indictment or information as might be presented or filed against him in the criminal court of Greene county, Missouri, and entered into recognizance for his appearance in said criminal court; that said respondent, who is judge of the circuit court of Greene county, Missouri, was, under articles 6 and 7 of chapter 35, Revised Statutes 1909, judge also of the juvenile court of Greene county, Missouri. Relator further states that on the 21st of January, 1914, there was served upon him a summons of which the following copy was appended to his application to this court for writ of prohibition:

### WRIT OF SUMMONS.

STATE OF MISSOURI, } ss.
County of Greene.

IN THE JUVENILE COURT OF GREENE COUNTY, MO.

THE STATE OF MISSOURI, To Morris Kelly and parents: You are hereby commanded that setting aside all manner of excuse and delay, you be and appear in proper person before

the Judge of the Juvenile Court in the City of Springfield on Monday at 9:00, the 2nd day of February, 1914, then and there to answer an information preferred by the State of Missouri at the relation of Sam M. Wear, against the said Morris Kelly, and wherein it is prayed that the said Morris Kelly be dealt with according to law as a delinquent child, a certified copy of which said information is hereto attached.

And the person or officer serving this writ is hereby commanded to have the same at the time and place aforesaid certifying thereon his return.

Witness, S. A. REED, Clerk of the Circuit Court and Ex-officio Clerk of the Juvenile Court within and for Greene County, Missouri, with the seal of said Court hereto affixed, at the office in the City of Springfield, this 21st day of January, 1914.

Attest:  A true copy of the original writ.

(L. S.)

S. A. REED,
Clerk of Circuit Court and Ex-officio Clerk of Juvenile Court.

[SEAL]

And there was attached to the summons a paper of which the following is a copy, signed by Sam M. Wear, prosecuting attorney of Greene county, Missouri, and filed in said juvenile court and attested by the clerk of said court.

### INFORMATION.

STATE OF MISSOURI  }  ss.
County of Greene.

IN THE JUVENILE COURT OF GREENE COUNTY, MO.

The State of Missouri at the relation of Warren L. White and Sam M. Wear, Prosecuting Attorney of Greene County, Missouri, Plaintiff,

versus

Morris Kelly, Defendant.

Sam M. Wear, Prosecuting Attorney within and for the county of Greene, in the State of Missouri at the relation of Warren L. White, informs the court that Morris Kelly on the 18th day of November, 1913, at the said county of Greene and State of Missouri, being then and there a child under the age of seventeen years, and then and there was unlawfully delinquent within the meaning of the act of the General Assembly of the State of Missouri, entitled, "An Act to Regulate Treat-

ment and Control of Delinquent Children in Counties of Fifty Thousand Population," approved June 12, 1909.

That on the said 18th day of November, 1913, the said Morris Kelly was then and there unlawfully delinquent under the laws of the State of Missouri and did unlawfully, willfully, feloniously, premeditatedly, deliberately and of his malice afore-thought in and upon the body of one Roy Johnson make an assault with a certain dangerous and deadly weapon, to-wit, a pocket knife having a blade of the length of three inches, and with the said knife which he, the said Morris Kelly then and there had and held in his hand, him, the said Roy Johnson, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought did strike, cut, stab, and thrust in and upon the left side of the body of him, the said Roy Johnson, giving to him, the said Roy Johnson, then and there with the knife aforesaid upon the left side of the body of the said Roy Johnson one mortal wound of the breadth of one inch and the depth of two inches, of which said mortal wound the said Roy Johnson then and there instantly died; so that the said Morris Kelly in the manner and form aforesaid the said Roy Johnson did then and there feloniously, willfully, deliberately, premed-itatedly and of his malice aforethought kill and murder con-trary to the form of the statute in such cases made and pro-vided, and against the peace and dignity of the State.

Wherefore the said relator and Sam M. Wear, Prosecuting Attorney, pray the court that the said Morris Kelly be brought before the Juvenile court of Greene county, Missouri, together with the parents of said defendant, then and there to show cause, if any there be, why the defendant should not be ad-judged delinquent under the law relating to delinquent children.

SAM M. WEAR.

Sam M. Wear, Prosecuting Attorney, makes oath and says that the facts stated in the foregoing information are true, according to his best information and belief.

SAM M. WEAR.

Subscribed and sworn to before me this 21st day of January, 1914.

S. A. REED,

Clerk of the Circuit Court of Greene County, Missouri, and Ex-Officio Clerk of the Juvenile Court of Greene County, Missouri.

(Duly certified by the clerk under the seal of the court.)

The relator states that in obedience to said sum-mons he appeared in said juvenile court on the second of February, 1914, where he was required to answer the above petition and to take part in the selection of a jury from the panel of forty which had been assem-

bled for the purpose of affording him a trial; that he refused to participate in such selection or to answer such petition and protested against such proceedings and the jurisdiction of said court. Whereupon, the judge of said court adjourned the hearing of said case until the 16th of February, 1914, and announced that it would be tried on said day. Relator further states that said court had no jurisdiction over him and that said paper writing copied above conferred no jurisdiction on it, and that the act of the General Assembly relating to said court was unconstitutional and void so far as concerns the subject-matter set forth in said paper writing and as to the person of this relator. Relator then specifies a number of reasons why he thinks the legislation relating to the juvenile courts is in violation of the Constitution of this State, which, if necessary to be ruled on, will be noted in the opinion.

This court was pleased to award its alternative writ, returnable In Banc on the 4th of March, 1914. Upon the issuance thereof and due service upon the respondent, he made a return setting up that he had been duly designated by the judges of the circuit court of Greene county to hear and determine all cases coming before the juvenile court of said county, concluding his return as follows:

"And this respondent says that as he construes said act he can as judge of said court proceed only according to such practice, according to the defendant in said case, the relator herein, all the rights as to trial by jury, method of procedure, and assessment of penalty by the jury, as he could claim were he tried in division number two of said circuit court of Greene county, which under the law has jurisdiction of criminal cases in which persons over seventeen years of age are defendants, and this respondent states that so construing said act he was about to and will if not permanently prohibited by this honorable court, proceed with the trial of said case of 'The State of Missouri v. Mor-

ris Kelly' and conduct said trial in all respects as it would according to law be conducted were it to take place in said division number two of said circuit court of Greene county having jurisdiction over criminal cases in which persons over seventeen years of age are defendants, and this respondent states that he desires to make no contention as to the constitutionality of said act of the General Assembly of April 11, 1911, but submits the same and all questions raised by relator herein to this honorable court for decision, and respectfully submits this as his return to the writ of prohibition herein issued and served upon this respondent.''

Respondent on the date of the filing of the above return also addressed a letter to the clerk of this court filed therewith, in which he stated that he would make no further appearance and would not be represented when the matter was argued.

Relator filed no demurrer to said return nor any adversary pleadings.

The case was not orally argued by either party, but was taken as submitted on a brief for relator and on the return made by respondent.

## OPINION.

### I.

BOND, J. (After stating the facts as above).—The questions intended to be made in this proceeding are of the highest import, but the proceeding itself is in an anomalous condition. No issue has been joined on the return, either by motion for judgment on the pleadings, or otherwise. We are not inclined in a matter of this gravity to rule on the contentions set forth in relator's brief when they do not arise upon any joinder of issue demanding their decision.

A proceeding attacking the constitutionality of the organization of a court and its procedure, which were

established by the Legislature from the most humane. motives and were designed to protect and help the future men and women of the State and fit them for the duties of citizenship, should only be brought upon the reasonable belief that the act sought to be annulled violates the constitutional rights of the relator in some essential manner. And this court will not consider such an attack until the issues properly presenting it are evolved. Nor will it sustain such an attack, even if properly presented, if there is any reasonable theory upon which the act of the Legislature may be constitutionally upheld.

While the objections urged in relator's brief to the act of the Legislature (Laws 1911, p. 177) are not ripe for decision under the state of the pleadings in this case, yet many of them have been held in judgment and overruled when the scheme of juvenile courts was elaborately reviewed and upheld in a decision of this court In Banc not cited by relator. [Ex parte Loving, 178 Mo. 149.] Again this beneficent judicial reform was also approved *sub silentio* in another case also not cited by relator. [State ex rel. v. Wilder, 197 Mo. l. c. 35.] Moreover, the power of the Legislature to create courts of this character would seem to be supported by a provision of the Constitution which expressly authorizes the creation of criminal courts in counties having over fifty thousand population. [Constitution 1875, art. 6, sec. 31.]

It appears from the return of the respondent, that he proposes to try the relator just as if he were prosecuted by the State on the same charge in the criminal court over which respondent presides when not performing his designated duties as judge of the adjunct to that court, called for convenience the juvenile court. It is manifest, therefore, that relator is not likely to experience any deprivation of the rights and privileges granted to him under the Constitution and statutes of this State, and that he will not suffer from our

declination to pass upon the contentions made in his brief, but not raised under the state of the pleadings.

## II.

Before disposing of this proceeding, it is well to note that there is only one statute containing a plan for the reformation of "negligent and delinquent children" by judicial procedure, which is now in existence, and that is the act of the Legislature approved April 11, 1911 (Laws 1911, p. 177), which act by section 24 thereof, expressly repealed the previous law on the subject contained in articles 6 and 7 of chapter 35 of the Revised Statutes of 1909, which had been taken from the Laws of 1909, p. 423, and these had expressly repealed the prior ones on this subject enacted in 1903 and 1905. [Laws 1909, p. 431, sec. 25.] The later act of 1913 (Laws 1913, p. 148), purporting to vest jurisdiction in the probate court of negligent and delinquent children in counties having a population of less than fifty thousand, was held unconstitutional by this court in a recent case by WALKER, J., In Banc. [State ex rel. v. Tincher, 258 Mo. 1.] That opinion clearly distinguishes the provisions of the Act of 1913, from those contained in the Act of 1911 which vests jurisdiction in the *circuit* court sitting as a juvenile court, and authorizes it to administer the general constitutional and statutory law in cases of the trial of criminal charges arising under that act. [Laws 1911, p. 179, sec. 2, p. 181, sec. 7 *et passim.*]

The fact that there is left but one valid act on the statute books of this State touching the exercise of judicial power on behalf of "negligent and delinquent children," was overlooked by the prosecuting attorney in the preparation of his information against the relator, for the document shows on its face that the charge therein made is based upon the Revised Statutes 1909, chapter 35, articles 6 and 7, although at

the time it was filed all the sections contained in the articles referred to had been expressly repealed by the Act of 1911.

Doubtless the learned respondent will not proceed to try the relator under the *present* information when his attention is directed to its terms, and will proceed in the matter after the filing of a proper information or the finding of an indictment as prescribed by the Constitution (Constitution, art. 2, sec. 12, Amendment of 1900), and will also conduct such trial in accordance with "the practice and procedure prescribed by law for the conducting of criminal cases," and with due observance of all the constitutional rights of relator. [Laws 1911, p. 180, sec. 2.]

We have concluded that by his failure to plead to the return of respondent, relator is not justified in invoking the ruling of this court upon the contentions set forth in his brief, which brief cites no decisions of this or any other court. Under these circumstances the proper disposition of this proceeding is to quash our alternative writ and to dismiss the application therefor, which is accordingly done. All concur, except *Woodson, J.,* who dissents.